UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

DANI B HOLDINGS LLC, and
BARBARA BREGOLI,
as natural mother and parent of
DANIELLE BREGOLI, a minor,

Plaintiffs,

v.

JOSIAH JENKINS, individually,
MATTHEW GRUETTNER, individually,
ANONYMOUS GAMES INC., a Wisconsin corporation,
APPNOXIOUS, LLC, a Wisconsin corporation, and
SQUAD SOCIAL LLC, a Georgia limited liability corporation,

Defendant.
_______________________________________/

## COMPLAINT

Plaintiffs, DANI B HOLDINGS LLC, and BARBARA BREGOLI, as natural mother and parent of DANIELLE BREGOLI, a minor, by and through their undersigned counsel, hereby sue the Defendants, JOSIAH JENKINS, ("JENKINS"), MATTHEW GRUETTNER, ("GRUETTNER"), ANONYMOUS GAMES INC., ("ANONYMOUS GAMES"), APPNOXIOUS, LLC, ("APPNOXIOUS"), and SQUAD SOCIAL LLC ("SQUAD SOCIAL"), and as grounds therefore states as follows:

## NATURE OF THE ACTION

1. This is a civil action seeking damages in excess of $75,000 and injunctive relief for fraud; trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C.§ 1125(a);

invasion of plaintiff's statutory and common law rights of publicity; statutory and common law unfair competition; common law misappropriation; and breach of contract.

2. This Court has jurisdiction of this action under 15 U.S.C. §1125(a), 28 U.S.C. § 1331, and 28 U.S.C. §§1338(a) and (b).

3. This Court has supplemental jurisdiction over the related claims pursuant to 28 U.S.C. §1367(a), in that they all are so related to the above federal claims that they form part of the same case or controversy. Alternatively, this court has jurisdiction pursuant to 28 U.S.C. §1332(a) in that the amount in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

4. This Court has personal jurisdiction over the Defendants in that the Defendants are doing business in the State of Florida and in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) in that a substantial part of the events or omissions involved in this action occurred in this District and the Defendants are subject to personal jurisdiction in this District.

**THE PARTIES**

6. Plaintiff, BARBARA BREGOLI, and her daughter, DANIELLE BREGOLI, ("Danielle") both are individuals residing in Palm Beach County, Florida.

7. Plaintiff, DANI B HOLDINGS LLC, ('DANI B HOLDINGS") is a Florida limited liability company authorized to do business, and doing business, in Florida.

8. Defendant, JOSIAH JENKINS, ("JENKINS") is an individual who, to the best of Plaintiff's knowledge, resides in Los Angeles, California.

9. Defendant, MATTHEW GRUETTNER, ("GRUETTNER") is an individual who, to the best of Plaintiff's knowledge, resides in Illinois.

10. Defendant, ANONYMOUS GAMES, INC., ("ANONYMOUS GAMES") is a Wisconsin corporation authorized to do business, and/or doing is business, in Florida.

11. Defendant, APPNOXIOUS, LLC, ("APPNOXIOUS') is a Wisconsin corporation authorized to do business, and/or is doing business, in Florida.

12. Defendant, SQUAD SOCIAL LLC, ("SQUAD SOCIAL") is a Georgia limited liability company authorized to do business, and/or doing is doing business, in Florida.

13. At all material times, Defendant, JENKINS, is and was an owner, principal, manager, and/or representative of Defendants, ANONYMOUS GAMES, APPNOXIOUS, and SQUAD SOCIAL.

14. At all material times, Defendant, GRUETTNER, is and was an owner, principal, manager, and/or representative of Defendants, ANONYMOUS GAMES, APPNOXIOUS, and SQUAD SOCIAL.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

15. On September 14, 2016, DANIELLE BREGOLI, together with her mother, BARBARA BREGOLI, appeared on an episode of the popular, nationally syndicated talk show, known as *Dr. Phil*. The subject episode was entitled "I want to give up my car-stealing, twerking 13-year-old daughter who tried to frame me for a crime".

16. The subject episode was filmed in front of a live studio audience, and after perceived disparaging remarks and gestures from the studio audience, then thirteen-year-old DANIELLE BREGOLI addressed the audience directly, telling them, in her own pronunciation, to "Cash me ousside, how bow dah".

17. This phrase, coined by DANIELLE BREGOLI on the spot, was a challenge to the audience members who Danielle believed were mocking her, meaning, from Danielle's

perspective, that if the audience wanted to continue mocking her, they could confront her outside and off-camera. Without Danielle's speech affect, the phrase literally meant: "Catch me outside, how about that."

18. After the airing of the subject *Dr. Phil* episode, both Danielle, and her catchphrase, went "viral"; clips and "memes" of Danielle uttering her now infamous catchphrase spread quickly throughout the internet, and before long pictures of Danielle, together with written mimicries of her catchphrase, could be found on the social media platforms of everyone from school-children to Hollywood celebrities and star professional athletes. In essence, Danielle, together with her catchphrase, became a widespread cultural phenomenon throughout the United States and internationally.

19. Following the explosion in popularity of Danielle and her catchphrase, Danielle, together with her mother, retained business managers who assisted in forming DANI B HOLDINGS, an entity whose purpose was and is to monetize on the popularity of Danielle and her catchphrase through the sale of merchandise depicting Danielle and/or her catchphrase, public appearances, appearances on television, and marketing opportunities, including posts through Danielle's popular Instagram and Facebook accounts, which currently total approximately 9,600,000 and 1,700,000 followers, respectively.

20. On or about January 27, 2017, in the midst of Danielle and her signature catchphrase's soaring popularity, the Defendants, JENKINS, GRUETTNER, ANONYMOUS GAMES, APPNOXIOUS, and SQUAD SOCIAL, developed and published a mobile gaming application, or "app", entitled "Cash Me Outside".

21. In form, the "Cash Me Outside" app was and remains an exceedingly simple and completely unoriginal game from a programming and game play perspective. In the app,

the focal character, designed to look exactly like the minor Plaintiff, Danielle, merely jumps from platform to platform, avoiding hazards and collecting points and wads of cash along the way.

22. Instead of creating a unique gaming experience, the Defendants obvious strategy from the very origination of the "Cash Me Outside" app was to utilize the popularity of Danielle and her signature catchphrase to drive demand, and downloads, for the app.

23. Specifically, in addition to titling the app "Cash Me Outside" after Danielle's signature catchphrase, the app uses Danielle's actual voice saying her signature catchphrase, and also uses an "avatar" - a computer-generated animation of a person - designed to look exactly like Danielle. This avatar of Danielle is heavily utilized, serving not only at the focal character, but also appearing on the icon butt and home screen page of the app.

24. In exploiting Danielle's likeness, voice, and catchphrase, the Defendants were able to create significant publicity for their app. In fact, as a result of the Defendants' unabashed exploitation of the minor Plaintiff, the Cash Me Outside app soon soared in popularity, at one point reaching the #1 downloaded gaming application nationally on Apple Inc.'s iTunes' App Store.

25. Obviously, the popularity of the "Cash Me Outside" created a significant monetary windfall for the Defendants. Specifically, while the Defendants do not charge users to download and play the app, at all times, the Defendants have earned revenue from the app through the publication of paid advertisement within the app, as well as from "in-app purchases", wherein users of the app can pay for upgraded features. Of course, the more people downloading and using the app equates to more advertising revenue and as well as in-app purchases.

26. On or around February 5, 2017, Danielle and her company, DANI B HOLDINGS, by and through her management team, made contact with Defendant, JOSIAH JENKINS, who identified himself as the owner, principal, and/or representative of Defendants, ANONYMOUS GAMES, APPNOXIOUS, and SQUAD SOCIAL.

27. In that first contact, JENKINS was informed that he and his companies were infringing on, inter alia, the publicity rights of Danielle and DANI B HOLDINGS. After further discussion, Mr. Jenkins and the representatives of Danielle and DANI B HOLDINGS came to a tentative understanding that Danielle and DANI B HOLDINGS would not pursue legal action against ANONYMOUS GAMES, APPNOXIOUS, and/or SQUAD SOCIAL, and instead the parties would create a joint venture wherein Danielle and DANI B HOLDINGS would allow for the use of Danielle's likeness, voice and catchphrase in the Cash Me Outside app, so long as ANONYMOUS GAMES, APPNOXIOUS, and/or SQUAD SOCIAL would remit to DANI B HOLDINGS an upfront payment for earnings generated by the Cash Me Outside app to date, plus a percentage split of the revenue generated moving forward. As a further aspect of this tentative agreement, Danielle would provide her marketing platforms to help drive additional demands and downloads for the app.

28. Over the ensuing days, there were several discussions, both telephonic and written, by and between Josiah Jenkins and representatives for Danielle and DANI B HOLDINGS. On a February 8, 2017 phone call, an oral agreement was reached wherein ANONYMOUS GAMES, APPNOXIOUS, and/or SQUAD SOCIAL would remit to DANI B HOLDINGS a $50,000.00 payment immediately, followed by a $25,000.00 payment, followed by a 50/50 revenue split in perpetuity.

29. Following the oral agreement, Josiah Jenkins emailed Danielle and DANI B HOLDINGS representatives with written confirmation of the agreed upon deal points. See, "**Exhibit**

**A**".

30. The next day, on February 9, 2017, representatives for Danielle and DANI B HOLDINGS emailed a formal agreement to Mr. Jenkins with the agreed upon deal points.

31. Over the ensuing weeks, representatives for Danielle and DANI B HOLDINGS continuously were in contact with Mr. Jenkins seeking execution of the agreement and remittance of the first agreed upon payment. In response, Mr. Jenkins repeatedly made excuses for his delay in executing the agreement and remitting the payment. This continued for a period of weeks until Mr. Jenkins ceased responding to all communications.

32. During the entirety of the back and forth communications as detailed in paragraph 31 above, Defendants, JENKINS, GRUETTNER, ANONYMOUS GAMES, APPNOXIOUS, and SQUAD SOCIAL continued to derive revenue from the Cash Me Outside app.

33. Moreover, on or about February 17, 2017, during the period of time as detailed paragraph 31 above wherein Defendant JENKINS was evading contact with the Plaintiffs'' representatives, unbeknownst to the Plaintiffs, the Defendants developed and publishes a second app entitled "How Bout Dat".

34. This "How Bout Dat" app also featured the actual voice of the minor Plaintiff, an avatar designed in the likeness of the minor Plaintiff, and of course, heavily utilized the minor Plaintiff's signature catchphrase.

35. Ultimately, as a result of the above sequence of events, the Plaintiffs' representatives advised JENKINS' that they would be seeking legal action against him and all other liable parties.

36. Following this notification of legal action, Defendant, GRUETTNER, emailed Plaintiffs' representatives, advising that he, GRUETTNER, was the actual developer of the Cash Me Outside app, that Josiah Jenkins was his former business partner in the Cash Me Outside app, that he, GRUETTNER, had recently had a dispute with JENKINS, that he, GRUETTNER, had retained ownership of the "code and assets" for the Cash Me Outside app, and that he, GRUETTNER, wanted to enter into an agreement with Danielle and DANI B HOLDINGS, in place of JENKINS.

37. Following this email, GRUETTNER and Plaintiffs' representatives had several discussions, both telephonic and written, intended to explore entering into an agreement of the same nature and kind as that which had been agreed upon with JENKINS.

38. Ultimately, like JENKINS before him, GRUETTNER stopped responding to all communications once any firm deliverables were requested of him.

39. During the entirety of the back and forth communications between GRUETTNER and Plaintiffs' representatives, as detailed in paragraphs 36-38 above, and to date, Defendants, JENKINS, GRUETTNER, ANONYMOUS GAMES, APPNOXIOUS, and SQUAD SOCIAL continue to derive revenue from the Cash Me Outside and the How Bout Dat apps.

**<u>COUNT 1: FRAUD AGAINST JENKINS</u>**

40. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

41. At all material times, the statements made to Plaintiffs' representatives by JENKINS in

the process of negotiating and/or entering the agreement for a joint venture on the Cash Me Outside app, as fully described above, were intentional misrepresentations in that JENKINS never intended to actually deliver on any of the obligations that he represented he would satisfy.

42. At all material times, JENKINS intended that Plaintiffs, by and through their representatives, would rely on such misrepresentations in not seeking immediate legal recourse against JENKINS and the Defendant entities of which he is an owner, principal, manager and/or representative.

43. At all material times, the reliance of Plaintiffs, by and through their representatives, on JENKINS' intentional misrepresentations was reasonable.

44. As a direct and proximate result of JENKINS' fraudulent conduct, Plaintiffs have been damaged in a sum which is not presently ascertainable, but which exceeds $1,000,000 and will be established by proof at trial. Said damages include, but are not limited to, the market value of the use of Danielle's likeness, voice, and catchphrase in the manner used by JENKINS; the endorsement value to JENKINS of the use of Danielle's likeness, voice, and catchphrase in publishing and promoting its apps; and the diminution and dilution in the value of Danielle's likeness, voice, and catchphrase for other commercial purposes as a result of JENKINS' unauthorized conduct.

**COUNT 2: FRAUD AGAINST GRUETTNER**

45. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

46. At all material times, the statements made to Plaintiffs' representatives by GRUETTNER in the process of negotiating a potential joint venture agreement, as fully described above,

were intentional misrepresentations in that GRUETTNER never intended to actually deliver on any of the obligations that he represented he would satisfy.

47. At all material times, GRUETTNER intended that Plaintiffs, by and through their representatives, would rely on such misrepresentations in not seeking immediate legal recourse against GRUETTNER and the Defendant entities of which he is an owner, principal, manager and/or representative.

48. At all material times, the reliance of Plaintiffs, by and through their representatives, on GRUETNNER'S intentional misrepresentations was reasonable.

49. As a direct and proximate result of GRUETNNER'S fraudulent conduct, Plaintiffs have been damaged in a sum which is not presently ascertainable, but which exceeds $1,000,000 and will be established by proof at trial. Said damages include, but are not limited to, the market value of the use of Danielle's likeness, voice, and catchphrase in the manner used by GRUETTNER; the endorsement value to GRUETTNER of the use of Danielle's likeness, voice, and catchphrase in publishing and promoting its apps; and the diminution and dilution in the value of Danielle's likeness, voice, and catchphrase for other commercial purposes as a result of GRUETTNER'S unauthorized conduct.

**COUNT 3: VIOLATION OF STATUTORY RIGHT OF PUBLICITY**
**AGAINST ALL DEFENDANTS**

50. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

51. Defendants' conduct, as hereinabove alleged, constitutes the invasion and infringements of Danielle's right of publicity under Florida Statutes Section 540.08.

52. As a direct and proximate result of defendant's wrongful conduct, Plaintiffs have been damaged in a sum which is not presently ascertainable, but which exceeds $1,000,000

and will be established by proof at trial. Said damages include, but are not limited to, the market value of the use of Danielle's likeness, voice, and catchphrase in the manner used by Defendants; the endorsement value to Defendants of the use of Danielle's likeness, voice, and catchphrase in publishing and promoting its apps; and the diminution and dilution in the value of Danielle's likeness, voice, and catchphrase for other commercial purposes as a result of Defendants unauthorized conduct.

53. The acts and conduct of the defendant, as hereinabove alleged, are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury which cannot adequately be compensated or measured in money. Plaintiffs have no adequate remedy at law. Plaintiff are entitled to preliminary and injunctive relief.

54. By reason of Defendants' wrongful acts, as hereinabove alleged, and in addition to all other relief:

   a. Plaintiffs are entitled to an accounting and award of all gross revenue received, directly or indirectly, by Defendants, as a result of the unauthorized use of Danielle's likeness, voice, and catchphrase in connection with Defendants publication and promotion of its apps and/or as a result of defendant approving, permitting, facilitating, and/or causing the use of the unauthorized use of Danielle's likeness, voice, and catchphrase in connection with Defendants publication and promotion of its apps; and

   b. Defendant is an involuntary trustee holding all such sums and proceeds under a constructive trust for the benefit of plaintiff with the duty to transfer the same to plaintiff forthwith; and

c. Plaintiffs are informed and believes, and on that basis alleges, that by knowingly using, and/or approving, permitting, facilitating and/or causing the use of Danielle's likeness, voice, and catchphrase without Plaintiffs' consent and for their own commercial and financial benefit, Defendants acted with fraud, oppression or malice, and Plaintiffs, in addition to their actual damages, are by reason thereof, entitled to recover damages for the sake of example and by way of punishing Defendants in such amount as the proof at trial may indicate is appropriate.

**COUNT 4: VIOLATION OF COMMON LAW RIGHTS OF PUBLICITY**
**AGAINST ALL DEFENDANTS**

55. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

56. Defendants' conduct, as hereinabove alleged, was knowing and constituted the invasion and infringement of the minor Plaintiff's common law right of publicity.

57. As a direct and proximate result of defendant's wrongful conduct, Plaintiffs have been damaged in a sum which is not presently ascertainable, but which exceeds $1,000,000 and will be established by proof at trial. Said damages include, but are not limited to, the market value of the use of Danielle's likeness, voice, and catchphrase in the manner used by Defendants; the endorsement value to Defendants of the use of Danielle's likeness, voice, and catchphrase in publishing and promoting its apps; and the diminution and dilution in the value of Danielle's likeness, voice, and catchphrase for other commercial purposes as a result of Defendants unauthorized conduct.

58. Plaintiffs are informed and believes, and on that basis alleges, that by knowingly using, and/or approving, permitting, facilitating and/or causing the use of Danielle's likeness, voice, and catchphrase without Plaintiffs' consent and for their own commercial and

financial benefit, Defendants acted with fraud, oppression or malice, and Plaintiffs, in addition to their actual damages, are by reason thereof, entitled to recover damages for the sake of example and by way of punishing Defendants in such amount as the proof at trial may indicate is appropriate.

**COUNT 5: VIOLATION OF SECCTION 43(a) OF THE LANHAM ACT**
**AGAINST ALL DEFENDANTS**

59. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

60. The Cash Me Outside and How Bout Dat apps developed and published by the Defendants have been and are being distributed in interstate commerce.

61. The aforesaid conduct of Defendants has caused and is likely to cause confusion and mistake among the general public, and/or has deceived and is likely to deceive the general public into believing that the minor Plaintiff is affiliated, connected, or associated with Defendants, and that Plaintiffs licensed, sponsored, or approved of Defendants use and promotion of the minor Plaintiff's likeness, voice, and catchphrase.

62. Defendant's unauthorized use of the minor Plaintiff's likeness, voice, and signature catchphrase, as set forth above, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. The acts and conduct of the Defendants, as hereinabove alleged, are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury which cannot adequately be compensated or measured in money. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to preliminary and injunctive relief.

64. Plaintiffs are informed and believes that Defendants' conduct as hereinabove alleged was willful, intentional, and outrageous.

65. In addition, as a direct and proximate result of Defendants' violations of the Lanham Act, Plaintiffs are entitled to damages in a sum that is not presently ascertainable but that exceeds $1,000,000, Defendants' profits, and the imposition of a constructive trust.

66. As a result of defendant's violations of Section 43(a) of the Lanham Act, Plaintiffs are entitled to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

**COUNT 6: UNFAIR BUSINESS PRACTICES**
**AGAINST ALL DEFENDANTS**

67. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

68. Defendants' actions, as hereinabove alleged, constitute unfair competition under the common law and within the meaning of, among other provisions of law, Florida Statutes § 501.201, et seq. Defendants' unauthorized use of Danielle's likeness, voice, and signature catchphrase falsely implies - to the general public, to potential investors and users of Defendants' services, and to third-parties who are interested in securing the rights to use Danielle's name, image, voice, likeness, and signature catchphrase - that Plaintiffs endorse, support, authorize or approve of Defendants and their apps, or is otherwise associated or affiliated with defendant and its products, services, goods, or merchandise.

69. As a direct and proximate result of Defendants' acts of unfair competition, Plaintiffs are entitled to restitution, injunctive relief, Defendants' profits, and the imposition of a constructive trust.

70. Plaintiffs are informed and believes, and on that basis alleges, that by knowingly using, and/or approving, permitting, facilitating and/or causing the unauthorized use of the

minor Plaintiffs' likeness, voice, and signature catchphrase without Plaintiffs' consent and for their own commercial and financial benefit, Defendants acted with fraud, oppression or malice, and Plaintiffs, in addition to their actual damages, are by reason thereof entitled to recover damages for the sake of example and by way of punishing Defendants in such amount as the proof at trial may indicate is appropriate.

**COUNT 7: MISAPPROPRIATION**
**AGAINST ALL DEFENDANTS**

71. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

72. Defendants, with full knowledge of Plaintiffs' rights and without Plaitniffs' consent, have been unlawfully appropriating Plaintiffs' property by publishing and promoting the apps bearing the minor Plaintiff's likeness, voice, and signature catchphrase.

73. The aforesaid acts of Defendant constitute a wrongful, unlawful, and unconscionable appropriation and taking by Defendants for their own benefit and profit of the goodwill represented by Plaintiff's name, image, likeness, voice, and signature catchphrase which goodwill is the product of Plaintiffs' work, skill, talent, experience and expenditures.

74. As a direct result of Defendants' unlawful misappropriation, Defendants have been unlawfully enriched in an amount for which damages and/or restitution is appropriate.

75. Defendants have willfully and intentionally misappropriated Plaintiffs' property with full knowledge of Plaintiffs' rights or with reckless indifference to the rights of Plaintiff. By reason thereof, Plaintiffs re entitled to recover exemplary and punitive damages against Defendants.

**COUNT 8: BREACH OF CONTRACT**
**AGAINST ALL DEFENDANTS**

76. Plaintiffs incorporate by reference the allegations of paragraphs 1-39 above as if fully set forth herein.

77. The Defendants, by and through JENKINS, entered into an agreement with Plaintiffs, as memorialized in part in the attached "Exhibit A".

78. The Defendants have breached said agreement by failing to remit any of the monies agreed upon, while still benefiting from the use of the minor Plaintiff's likeness, voice, signature catchphrase, and popularity.

79. As a direct and proximate result of Defendants' breach of this agreement, Plaintiffs have been damaged in a sum which is not presently ascertainable, but which exceeds $1,000,000 and will be established by proof at trial. Said damages include, but are not limited to, the market value of the use of Danielle's likeness, voice, and catchphrase in the manner used by Defendants; the endorsement value to Defendants of the use of Danielle's likeness, voice, and catchphrase in publishing and promoting its apps; and the diminution and dilution in the value of Danielle's likeness, voice, and catchphrase for other commercial purposes as a result of Defendants unauthorized conduct.

WHEREFORE, Plaintiffs prays for judgment against all Defendants as follows:

a. For damages according to proof;

b. For all profits derived by Defendants as a result of their unauthorized use of the minor Plaintiffs' likeness, voice, and signature catchphrase in the publication and promotion of their apps, and/or causing the unauthorized use of the minor Plaintiffs' likeness, voice, and signature catchphrase;

c. For an accounting, under the supervision of the Court, and the imposition of a constructive trust over all sums (and all interest and other proceeds of all sums) received, directly or indirectly, by Defendants as a result of unauthorized use of the minor Plaintiffs' likeness, voice, and signature catchphrase in the publication and promotion of the Defendants' apps;

d. For treble Plaintiffs' actual damages;

e. For all statutory damages available;

f. For punitive damages in an amount to be determined at trial;

g. For preliminary and permanent injunctions enjoining Defendants and their agents, representatives, servants, employees, or any other person acting in concert with them, from using the Danielle's name, image, likeness, voice and signature catchphrase for any reason without Plaintiffs' prior consent or authorization;

h. For attorneys' fees and costs of suit incurred herein;

i. For interest according to law;

j. For a trial by jury on all issues so triable; and/or

k. For such other and further relief as the Court deems just and proper.

Dated this 1st day of June, 2017.

THE ROUSSO LAW FIRM
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By: ***/s/ Adam T. Boumel, Esq.***
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
adam@roussolawfirm.com
SERVICE EMAIL:
roussolaw@yahoo.com